| | |
|---|---|
| **KAZEROUNI LAW GROUP, APC**<br>Abbas Kazerounian, Esq. (IL: 6316129)<br>ak@kazlg.com<br>245 Fischer Avenue, Unit D1<br>Costa Mesa, CA 92626<br>Telephone: (800) 400-6808<br>Facsimile: (800) 520-5523 | **THE HANRAHAN FIRM**<br>Corey Hanrahan, Esq. (CA Bar #256835)<br>Westin Emerald Plaza<br>402 West Broadway, Suite 1760<br>San Diego, California 92101<br>Telephone: (619) 377-6522<br>Facsimile: (619) 377-6662<br>*Appearing Pro Hac Vice*<br>*(Pro Hac Vice To Be Filed)* |

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (CA Bar #225557)
josh@westcoastlitigation.com
Yana A. Hart, Esq. (CA Bar No: 306499)
yana@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022
*Both Appearing Pro Hac Vice*
*(Pro Hac Vice To Be Filed)*

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ARIANNA TANGHE, a minor, by and through her parent and natural guardian, KELLI KING-TANGHE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA CORPORATION., d/b/a BANK OF AMERICA CHICAGO MARATHON<br>Defendant. | Case No.:<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF UNDER THE AMERICANS WITH DISABILITIES ACT 42 U.S.C. § 12181** *et seq.* **("ADA")**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

## INTRODUCTION

1. Plaintiff Arianna Tanghe, a minor, by and through her parent and natural guardian, Kelli King-Tanghe ("Plaintiff") brings this Class Action Complaint for injunctive relief, and any other available legal or equitable remedies, resulting from the illegal discrimination by Defendant Bank of America Corporation, d/b/a Bank of America Chicago Marathon (hereinafter, referred to as "Defendant") in depriving Plaintiff from full and equal opportunity to participate in a certain 2017 Chicago Marathon, organized and sponsored by Defendant, on the ground of Plaintiff's disability, in violation of the Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, ("ADA."). Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

2. The Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

3. The Title III of the ADA further prohibits private and public entities from imposing or applying eligibility criteria for use of a public accommodation that screen out or tend to screen out the disabled from fully and equally enjoying any goods, services, facilities, privileges, or advantages of that public accommodation or fail to modify policies or take steps necessary to afford the disabled goods, services, facilities, and other benefits of the accommodation. 42 U.S.C. §§ 12182(b)(2)(A)(i-iii).

4. "The ADA seeks to eliminate unwarranted discrimination against disabled individuals in order both to guarantee those individuals equal opportunity and to provide the Nation with the benefit of their consequently increased productivity." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 801, 119 S. Ct. 1597, 1601 (1999); (*citing* 42 U.S.C. §§ 12101(a)(8),(9)); *see also Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 750 (7th Cir. 2006).

5. The phrase "public accommodation" is defined for purposes of Title III in terms of 12 extensive categories of facilities leased or operated by private entities "if the operations of such entities affect commerce." The facilities covered include "public gatherings," and "places of exercise or recreation." *See* 42 U.S.C. § 12181(7).

6. "The phrase 'public accommodation' . . . should be construed liberally to afford people with disabilities equal access to the wide variety of establishments available to the nondisabled." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 664, 121 S. Ct. 1879, 1884 (2001).

## JURISDICTION AND VENUE

7. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this case arises out of violation of federal law pursuant to Title III of the ADA, 42 U.S.C. § 12180 *et seq.*

8. Venue is proper in the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1391 because the conduct complained of herein occurred within this judicial district and many of the acts and transactions giving rise to this action occurred in this district because Defendant:

   (a) is authorized to conduct business in this district and have intentionally availed itself of the laws and markets within this district;

(b) does substantial business within this district;

(c) is subject to personal jurisdiction in this district because it has availed itself of the laws and markets within this district; and,

(d) the harm to Plaintiff occurred within this district.

## PARTIES

9. Plaintiff, at all times mentioned herein was, a resident of the County of Stanislaus, State of California.

10. Plaintiff is a qualified individual with a disability, as that term is defined under the Title III of the ADA, 42 U.S.C. § 12131(2).

11. Plaintiff is informed and believes, and thereon alleges, that Defendant is, and at all times mentioned herein was, a North Carolina Corporation, a bank holding and financial holding company, with numerous offices, branches, and subsidiaries throughout the United States.

12. At all material times hereto, Defendant organized and sponsored 2017 Bank of America Chicago Marathon ("Chicago Marathon"), which will take place on October 8, 2017.

13. Upon information and belief, Defendant is responsible for administering, overseeing, supervising, and carrying out the mission, purposes, and policies of the 2017 Chicago Marathon event.

14. Defendant's 2017 Chicago Marathon event is open to the public to participate in or attend the event and cheer for running participants, for the purposes of exercise and/or recreation, and thus, Defendant is a "private entity," providing "public accommodation" as defined under the Title III of the ADA, 42 U.S.C. § 12181(7).

15. Defendant's sponsored and organized 2017 Chicago Marathon event is specifically designed to attract a large number of people, and is, therefore, falls within the categories of places of "public accommodation" as that term defined under the title III of the ADA.

16. Upon information and belief, the website for Defendant's organized and sponsored Chicago Marathon event is https://www.chicagomarathon.com.
17. Plaintiff alleges that at all times relevant herein Defendant conducted business in the State of Illinois and in the City of Chicago, and within this judicial district.

## FACTUAL ALLEGATIONS

18. Plaintiff was born with a permanent physical disability, specifically spastic quadriplegic cerebral palsy, and must daily rely on her use of a wheelchair and ankle foot orthotics.
19. Plaintiff also has visual impairment and is in need of assistance in her daily life.
20. Plaintiff frequently participates in various marathons by riding a customized racing wheelchair with an assistance of her mother as a "pusher," Kelli King-Tanghe, a non-disabled person, in a so called "duo team."
21. Plaintiff, together with her mother, participated in over 60 races as a "duo team," sharing the joy of participation and competition with other non-disabled race applicants.
22. Duo teams are generally permitted to participate in marathons, where one non-disabled individual is pushing the wheelchair with the permanently disabled individual.
23. Defendant is sponsoring and organizing 2017 Chicago Marathon event, which is scheduled to take place on October 8, 2017.
24. Defendant's 2017 Chicago Marathon is open to all willing participants, including duo teams.
25. The lottery drawing for the duo teams took place on January 24, 2017.
26. The duo teams are the only disabled athletes that are required to participate in a lottery drawing to determine participation for the Chicago Marathon.

The lottery drawing for the 2017 Chicago Marathon for non-disabled participants took place in November 2016.

27. Therefore, in addition duo teams being the only disabled participants subjected to the lottery drawing (i.e. the Chicago Marathon does not limit the number of participants, or employ a lottery drawing, for push rim participants or provides a significantly higher limit which has not been reached for years), the duo teams are disadvantaged by being accepted into the Chicago Marathon much later than the general field, thereby making it much more difficult (if not impossible) to find lodging in or around Chicago.

28. Approximately 45,000 runners were selected to participate in 2017 Chicago Marathon.

29. Defendant's drawing, although unlimited as to most participants, only allows six (6) slots for the duo teams.

30. On or about December 27, 2016, Plaintiff applied with her mother to participate in 2017 Chicago Marathon event in a "duo team."

31. Plaintiff complied with all the participation requirements, timely contacted the required organizers and signed any related release(s) to participate in the 2017 Chicago Marathon.

32. On or about January 24, 2017, when Defendant conducted a drawing, Defendant selected and drew only six (6) duo teams.

33. Plaintiff's duo team was not selected through Defendant's six-slot limited lottery.

34. Even though there is no guarantee whether an individual would be selected through a lottery system, Plaintiff was deprived *of an opportunity* to participate in an unlimited lottery drawing, open to every nondisabled participant. Furthermore, Plaintiff was deprived *of an opportunity* to participate in a larger lottery drawing open to disabled persons who can propel themselves in their own push rim wheelchair or hand-crank cycle.

**CLASS ACTION COMPLAINT** PAGE 5 OF 11

35. No other individuals are subject to the six-slot lottery limit, except for permanently disabled individuals in need of a "pusher."

36. For disabled individuals who can propel themselves in their own push rim wheelchair or hand-crank cycle, there is no lottery system and the disabled individuals are allowed to participate simply if they apply; alternatively, if there is a lottery system, the available slots for these individuals is so high that everyone who applies is allowed to participate simply by applying (i.e. the cap on the lottery system is not met).

37. Upon information and belief, accommodating duo teams is not costly and does not require significant changes to the policies or organization of the event.

38. Upon information and belief, there is no clear purpose for Defendant's limit to only six (6) duo teams, even though none of other participants whether non-disabled or disabled, are subject to this restriction.

39. As a direct and proximate result of Defendant's strict requirement and allocation of only six (6) available slots to the wheelchair duo teams, Defendant deprived Plaintiff's benefits of the full and equal opportunity to participate in the 2017 Chicago Marathon event, in violation of the Title III of the ADA by reason of Plaintiff's permanent disability.

40. Defendant denied Plaintiff full and equal opportunity to participate in the lottery drawing based on Plaintiff's degree of handicap, and requirement for Plaintiff to have a "pusher," Plaintiff's opportunity to participate in the lottery was significantly limited.

41. Individuals like Plaintiff struggle to live their lives and compete with non-disabled, and participate as much as they can in activities with reasonable accommodations.

42. Defendant's unreasonable discrimination of Plaintiff based solely on a degree of Plaintiff's disability and Defendant's failure to provide reasonable accommodation is especially egregious in this matter.

43. Defendant unreasonably limited the cap to only <u>six</u> duo teams, while over forty-five thousand participants are not subject to this unreasonable limit.

## CLASS ACTION ALLEGATIONS

44. Plaintiff brings this action on behalf of herself and on behalf of all others similarly situated (the "Class").

45. Plaintiff represents, and is a member of the Class, consisting of:

> All permanently disabled persons within the United States who require an assistance of a "pusher" and have timely applied to participate at the Defendant's 2017 Chicago Marathon event.

46. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the Class members number in the several hundreds, if not more. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

47. Plaintiff and members of the Class were harmed by the acts of Defendant in at least the following ways: Defendant, either directly or through their agents, illegally discriminated against Plaintiff and the Class members on the grounds of Plaintiff's and Class members' permanent disability in that Plaintiff and Class members require an assistance of a "pusher" to participate in 2017 Chicago Marathon event. Plaintiff and the Class members were denied of full and equal opportunity to participate in the Chicago Marathon event.

48. This suit seeks only injunctive relief on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

49. The joinder of the Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the court. The Class can be identified through Defendant's records or Defendant's agents' records.

50. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the Class predominate over questions which may affect individual Class members, including the following:

   a) Whether Defendant discriminated against Plaintiff and Class members;

   b) Whether Defendant discrimination was on the grounds of Plaintiff's and Class members' disability;

   c) Whether Defendant could have provided reasonable accommodations to Plaintiff and Class members;

   d) Whether such accommodations are costly or require significant changes;

   e) Whether Defendant and their agents should be enjoined from engaging in such conduct in the future;

   f) Whether Defendant is required to remediate its discrimination by offering a separate drawing to Plaintiff and Class members.

51. As a person who is permanently disabled, and requires and assistance of a "pusher" at the 2017 Chicago Marathon event, who was denied equal opportunity to participate in Defendant's 2017 Chicago Marathon event,

Plaintiff is asserting claims that are typical of the Class. Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interests antagonistic to any member of the Class.

52. Plaintiff and the members of the Class have all suffered irreparable harm as a result of Defendant's unlawful and wrongful discrimination conduct. Absent a class action, the Class will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct. Because of the size of the individual Class member's claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.

53. Plaintiff has retained counsel experienced in handling class action claims.

54. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with federal law. Since Plaintiff only seeks injunctive relief of behalf of the class, the interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because there is no independent recovery of statutory or actual damages maximum statutory damages in an individual actions seeking injunctive relief, and individual Class members rights to pursue their actual damages remain unaffected. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

55. Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

# FIRST CAUSE OF ACTION
## TITLE III OF THE ADA
### 42 U.S.C. § 12181 ET SEQ

56. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

57. Defendant's conduct in denying and depriving Plaintiff and Class members with full opportunity to participate in 2017 Chicago Marathon based on the level of Plaintiff's disability and the need of a "pusher" to participate in the race violated the Title III of the ADA, 42 U.S.C. § 12182 and its implementing regulations.

58. Defendant's conduct in failing to provide Plaintiff and Class members with reasonable accommodations or modification of the lottery system in which Plaintiff and Class members are limited to only six (6) illegally discriminated against Plaintiff and Class members.

59. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members were personally affected and deprived of full and equal opportunity to participate in 2017 Chicago Marathon event.

60. Plaintiff and Class members have and continue to suffer an irreparable harm as a result of Defendant's violation of the Title III of the ADA.

61. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and the Class members pray for judgment as follows against Defendant:

- Certify the Class as requested herein;
- Appoint Plaintiff to serve as the Class Representative in this matter;
- Appoint Plaintiff's Counsel as Class Counsel in this matter;

- Providing such further relief as may be just and proper.

In addition, Plaintiff and the Class members pray for further judgment as follows against Defendant:

## FIRST CAUSE OF ACTION
## TITLE III OF THE ADA
## 42 U.S.C. § 12181 ET SEQ

- Injunctive relief prohibiting such conduct in the future;
- Injunctive relief requiring Defendant to conduct a separate drawing for Plaintiff and Class members to remedy the discrimination and provide them with an equal opportunity to participate in a separate non-discriminatory lottery in order for 2017 Chicago Marathon event;
- Litigation costs;
- Attorneys' fees;
- Any other relief the Court may deem just and proper.

## TRIAL BY JURY

62. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: March 16, 2017

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By:  \_s/ ABBAS KAZEROUNIAN\_\_\_\_\_
ABBAS KAZEROUNIAN, ESQ.
AK@KAZLG.COM
ATTORNEY FOR PLAINTIFF